PER CURIAM.
This appeal involves the taxation of distributions made by an S corporation to a New Jersey resident shareholder. The issue presented is how the accumulated adjustments account (AAA) for an S corporation should be calculated for New Jersey purposes. Plaintiffs Morris and Charlotte Cohen assert that principles expressed in Koch v. Director, Division of Taxation, 157 N.J. 1, 722 A.2d 918 (1999) limit the losses otherwise taken into account in calculating AAA pursuant to federal law. Specifically, the Cohens argue that losses that are passed through to shareholders but are not deductible by the taxpayer under New Jersey’s Gross Income Tax (GIT) may not reduce New Jersey AAA.
Morris Cohen (Cohen) received a distribution of $554,292 in 2003 from Conway Stores, Inc. (Conway), a New York S corporation organized in 1962. Conway was recognized as an S corporation for New Jersey tax purposes in 1995. At the time of the distribution, Cohen owned twenty-five percent of Conway’s shares. Relying on their contentions regarding the calculation of the AAA, Cohen and his wife Charlotte claimed the distribution was not subject to the GIT on their joint return.
The Director of the Division of Taxation took the opposite view. After an audit in 2007, the Director determined the entire distribution to Cohen was taxable. After the Cohens’ administrative appeal and a conference, the Director confirmed the taxable nature of the distribution, and issued a final determination indicating a net deficiency of $67,750, including interest, penalties, and credits.
The Cohens filed an appeal with the Tax Court. After cross-motions for summary judgment, the court affirmed the Director’s determination and dismissed the complaint. The Cohens renew their arguments in their appeal before us. Having reviewed their arguments in light of the facts and applicable principles of law, we affirm.
I.
To place the disputed issue in context, we review established principles. An S corporation is a pass-through entity. See Sid *551 man v. Dir., Div. of Taxation, 19 N.J.Tax 484, 492 (App.Div.), certif. denied, 170 N.J. 387, 788 A.2d 772 (2001). Under federal law, to avoid double-taxation, income of an S corporation is not taxed at the corporate level; instead, income and losses are generally passed through to individual shareholders in proportion to their stock ownership. 26 U.S.C.A. § 1366(f)(2); see, e.g., Huffman v. Comm’r, 518 F.3d 357, 359 n. 2 (6th Cir.2008).
New Jersey began to recognize S corporations with the enactment of L. 1993, c. 173. “Net pro rata share of S corporation income” became a category of income subject to GIT. N.J.S.A. 54A:5-1(p). The income, dividends, and gains of an S corporation became subject to the GIT, and the GIT was “imposed on the shareholder’s pro rata share, whether or not distributed, of the S corporation income.” N.J.S.A. 54A:5-9.
However, New Jersey recognized S corporations with significant deviations from the federal law governing S corporations. For example, New Jersey continued to impose tax at the corporate level, albeit at a reduced level. L. 1993, c. 173, § 2. Importantly for our purposes, the drafters also recognized that, consistent with New Jersey’s system of taxing gross income, losses of an S corporation would be treated differently under the New Jersey law.
Unlike under the federal system, “net losses from S corporations are not utilized against other income.” Assembly Appropriations Comm. Statement to Assembly Comm. Substitute for Assembly Bill Nos. 273 and 1870 (June 3, 1993) (Assembly Statement) 1; see also id. at 2 (“S corporation shareholders will receive no tax benefit for their share of new pro rata S corporation losses.”); N.J.S.A. 54A:5-2. A federal taxpayer may utilize passed-through losses of an S corporation to reduce personal federal income tax liability. 26 U.S.C.A. § 1366(a). While the aggregate amount of losses and deductions taken into account cannot exceed the sum of the adjusted basis of the shareholder’s stock in the S corporation, any loss or deduction exceeding the adjusted basis can be indefinitely carried over to future years. 26 U.S.C.A. § 1366(d).
*552 On the other hand, a New Jersey GIT taxpayer may not utilize an S corporation’s losses to reduce another category of income. N.J.S.A. 54A:5-2. S corporation losses may only serve to offset income from other S corporations in which the taxpayer holds stock. See N.J.S.A. 54A:5-1(p) (imposing tax on “[njet pro rata share of S corporation income”) (emphasis added); Assembly Statement at 2. Moreover, there is no carry-forward of losses. N.J.S.A. 54A:5-12(b).
Generally speaking, to the extent a shareholder utilizes passed through losses to reduce federal tax, the shareholder also reduces his or her basis in the stock of the S corporation. 26 U.S.C.A. § 1367(a)(2). By contrast, the basis for New Jersey tax purposes is calculated by generally adding back those losses deducted for federal tax purposes. N.J.S.A. 54A:5-1(e); see also 43 David E. Crabtree, New Jersey Practice State and Local Taxation § 17.4 (2d ed.2007) at 357. Thus, the net taxable gain on the sale of shares in an S corporation may be significantly less for New Jersey tax purposes than for federal tax purposes.
As noted, the income of an S corporation is passed through and taxed at the shareholder level, whether or not the income is distributed to the shareholder. The AAA is a mechanism for tracking the income and losses of an S corporation, and determining the treatment of distributions to an S corporation shareholder. An S corporation’s AAA “is an account of the aggregate amount of the adjustments made under 26 U.S.C.A. § 1367 to the basis that shareholders have in their stocks and debt instruments of the corporation because of the allocation to the shareholders of tax items of the corporation.” Douglas A. Kahn & Jeffrey S. Lehman, Corporate Income Taxation § 6.20.2 (5th ed.2001) at 552.
Subject to exceptions, the AAA mirrors adjustments to the basis of each shareholder’s stock. See 26 U.S.C.A. § 1367 (adjustments to basis); 26 U.S.C.A. § 1368(e) (incorporating manner of adjustments under § 1367, with exceptions, to calculate AAA). In general, under federal law, the basis is increased by the amount of an S corporation’s income, and decreased by the amount of losses. 26 U.S.C.A. § 1367(a). For our purposes, the AAA of an S *553 corporation begins at zero when the corporation is created, and, like adjustments to basis, an S corporation’s AAA rises with income, and falls with losses. 26 U.S.C.A. § 1368(e); 26 C.F.R. § 1.1368-2(a). However, unlike the shareholder’s basis, the AAA may fall below zero upon the accounting of losses. 26 U.S.C.A. § 1368(e)(1)(A); 26 C.F.R. § 1.1368-2(a)(3)(ii). An AAA also decreases by the amount of distributions, but not below zero. 26 C.F.R. § 1.1368-2(a)(3)(iii). Thus, once an AAA falls below zero, it may become positive again with the addition of subsequent income that offsets the negative balance.
In a year when the AAA is positive, and exceeds the amount of distributions made to shareholders, the distribution is not taxable to the shareholder so long as the distribution is less than the shareholder’s basis. See 26 U.S.C.A § 1368(b), (e). In effect, the shareholder has already paid tax on the distributed amount in the year the income was passed through to the taxpayer. See Kahn & Lehman, supra, § 6.20.2 at 554 (“The purpose of the AAA is to permit an S corporation to make nondividend distributions to its shareholders in an amount equal to its net posb-1982 income that was previously taxed to its shareholders.”). On the other hand, to the extent a distribution exceeds the AAA or the taxpayer’s basis, the distribution is treated as taxable. Thus, when the AAA is below zero, distributions made by the S corporation to shareholders are taxed at the shareholder level.
Subject to several modifications not material here, New Jersey expressly adopted the federal method for calculating AAA N.J.S.A. 54A:5-14(c)(2) defines AAA to mean “an amount that is equal to, and adjusted in the same manner as, the S corporation’s accumulated adjustments account defined in section 1368(e)(1)(A) of the Internal Revenue Code of 1986” except that “modifications required to be made pursuant to the definition of S corporation income shall be taken into account.” “S corporation income” is defined at N.J.S.A. 54A5-10, and incorporates federal concepts, with modifications. “ ‘S corporation income’ means the net of an S corporation’s items of income, loss or deduction taken into account by the shareholder in the manner provided in section 1366 of the federal Internal Revenue Code of 1986,” without the exclusion, *554 deduction or credit of five categories of items, and subject to other provisions, none of which pertain to the issues before us.[1]
The Director has interpreted the statute, consistently with federal law, to provide that AAA shall be reduced by the S corporation’s losses. N.J. Div. of Taxation, Bulletin GIT-9S, Tax Topic — Income from S Corporations, (Rev.12/09) 26, available at http://www.nj.gov/treasury/taxation/pdf/pubs/eorp/git9 (stating, in directions for preparing AAA worksheet, that “any other reductions made to your federal AAA ... must also be made to your New Jersey AAA, provided that these reductions have not already been taken into consideration in calculating S corporation income” elsewhere). The Director also recognizes that the AAA may fall *555 below zero, stating, “It is possible that the ending balance of your New Jersey AAA will be negative.” Id. at 27.
We note that the AAA for New Jersey purposes is a shareholder account. Id. at 25. By contrast, the AAA under federal law “is an account of the S corporation and is not apportioned among shareholders.” 26 C.F.R. § 1.1368-2(a)(1).
II.
According to the 2007 audit, Cohen’s New Jersey AAA for Conway had a negative value in 2003. The Cohens contend that, consistent with Koch, Cohen’s New Jersey AAA should not be reduced by the amount of losses that a New Jersey taxpayer may not deduct for GIT purposes. The Cohens call these losses “phantom losses.” Applying their proposed rule, Cohen’s New Jersey AAA never fell below zero, despite substantial “phantom losses” passed through to them in the years preceding 2003.
We set forth in the following table the Division’s calculations of AAA (with a modification discussed below), the Cohens’ calculation as reflected in filed K-ls, and the Cohens’ proposed recalculation of the AAA, based on their contentions. We note the Cohens proposed the latter calculations in their 2008 conference with the Division, but apparently never amended their K-ls to conform to those calculations.
Year NJ’s Post-Audit Cohens’Initial Cohens’Proposed Calculation Calculation Calculation
1995 Beginning $0.00 $0.00 $0.00
Adjustments ($682,018) ($682,018) $0.00
Ending ($682,018) ($682,018) $0.00
1996 Beginning ($682,018) ($682,018) $0.00
Adjustments ($448,396) ($448,396) $0.00
Ending ($1,130,414) ($1,130,414) $0.00
1997 Beginning ($1,130,414) ($1,130,414) $0.00
Adjustments ($875,617) ($875,617) $0.00
Ending ($2,006,031) ($2,006,031) $0.00
1998 Beginning ($2,006,031) ($1,073,648) $0.00
*556 Adjustments ($1,787,848)[2] ($1,787,848) $0.00
Ending ($3,793,879) ($2,861,496) $0.00
1999 Beginning ($3,793,879) ($2,861,496) $0.00
Adjustments ($40,786) ($40,786) $0.00
Ending ($3,834,665) ($2,902,282) $0.00
2000 Beginning ($3,834,665) ($2,902,282) $0.00
Adjustments $636,673 $636,673 $636,673
Ending ($3,197,992) ($2,265,609) $636,673
2001 Beginning ($3,197,992) ($2,265,609) $636,673
Adjustments $1,131,997 $1,131,997 $1,131,997
Ending ($2,065,995) ($1,133,612) $1,768,670
2002 Beginning ($2,065,995) ($1,133,612) $1,768,670
Adjustments $1,062,293 $1,062,293 $1,062,293
Ending_($1,003,702)_($71,319)_$2,830,963
2003 Beginning ($1,003,702) ' ($71,319) $2,830,963
Adjustments $647,307 $647,307 $747,307
Ending ($356,395) $575,988 $3,478,270 [3]
The 2003 year-end numbers reflect the calculations before the distribution of $554,292 to Cohen, as a stockholder. As reflected in the table, Conway had significant losses between 1995 and 1999, resulting in a negative AAA, according to the Division’s audit and Cohen’s initial calculations. According to the Division’s audit, notwithstanding income in subsequent years, Cohen’s AAA remained below zero.
Although it is no longer significant to the Cohens’ appeal, according to the Cohens’ initial calculations, the AAA became positive in 2003, even after deducting losses to produce an AAA below zero. However, that initial calculation depended in part on Cohen’s unexplained failure to carry over the 1997 year-end AAA amount of $2,006,031, to the 1998 beginning amount. Instead, the AAA at the start of 1998 was, without explanation, $1,073,648 — a difference of almost $1 million. The Cohens ultimately failed to justify the discrepancy and have abandoned a defense of those calculations in their argument to us.
*557 Instead, they maintain that Conway’s losses should not reduce Cohen’s New Jersey AAA. As a result, they contend the AAA remained at zero during the loss years between 1994 and 1999, and then steadily increased as a result of the positive adjustments in 2000 through 2003, ultimately exceeding $3.4 million. Based on that amount, the Cohens’ claim that the 2003 distribution was not subject to GIT.
The Director rejected the Cohens’ new approach, noting that while Cohen was unable to utilize the losses to reduce taxable income, the losses would be added back to the basis upon the sale of Cohen’s stock. Before the Tax Court, the Director argued that any amendment to the 2003 returns was time-barred, citing N.J.S.A. 54A:9-8.[4] The State asserted that the Cohens were bound by the K-ls they filed for 2003.
In dismissing the Cohens’ complaint, the Tax Court did not expressly address the Cohens’ argument that Koch supported them proposed calculations. The Tax Court judge opined that absent an adequate explanation of the discrepancy between the year-end 1997 AAA, and 1998 AAA, the Koch issue was not properly presented. Instead, the court reviewed New Jersey law on the taxation of S corporation income, and, consistent with those principles, concluded that Cohen’s AAA remained less than zero when the distribution was made.[5]
III.
The Cohens present a purely legal issue. As noted, they have abandoned the claim that their initial calculations were correct. Rather, they contend as a legal matter that unusable passed-through losses may not reduce New Jersey AAA.
*558 We review the trial court’s decision de novo. “While factual findings of a Tax Court judge are entitled to deference because of that court’s expertise in the field, the judge’s interpretation of a statute is not entitled to such deference and is subject to our de novo review.” Waksal v. Dir., Div. of Taxation, 215 N.J. 224, 231, 71 A.3d 878 (2013) (internal quotation marks and citation omitted). We likewise conduct a de novo review of the Tax Court’s grant of summary judgment. Id. at 231-32, 71 A.3d 878. As noted, the Tax Court did not directly address the Cohens’ argument regarding the calculation of New Jersey AAA.
On the other hand, we extend some deference to the Director’s interpretation of the operative law. We do so based on “the Director’s expertise, particularly in specialized and complex areas of the Act,” and the Director’s responsibility to interpret the law he is charged with enforcing. Koch, supra, 157 N.J. at 8, 722 A.2d 918. “However, this deference is not total, as the courts remain the final authorities on issues of statutory construction.” Ibid. (internal quotation marks and citation omitted).
Applying this standard of review, we are unpersuaded that Koch supports the AAA calculation rule that the Cohens advocate. The Cohens argue that Koch bars “rote incorporation of the federal tax rules found at Code §§ 1358 and 1371 and referenced in N.J.S.A. [ ]54A:5-14.” However, at bottom, the Cohens ask us to depart from the plain language of the statute, and create a rule that is compelled neither by Koch nor the intended meaning of the statute.
We find no persuasive basis in the language of the statute to support the Cohens’ argument that losses may not reduce New Jersey AAA below zero. As discussed above, the express terms of the New Jersey statute command application of federal principles to calculate AAA. N.J.S.A. 54A:5-14 defines AAA as the “amount that is equal to, and adjusted in the same manner as, the S corporation’s accumulated adjustments account defined in section 1368(e)(1)(A)” of the federal code, except that “modifications required to be made pursuant to the definition of S corporation income shall be taken into account.” The definition of S corpora *559 tion income does not dictate treatment of S corporation losses that materially differs from that required by federal law. As noted above, in the Division’s publication, the Director has interpreted the statute to provide for reduction of AAA by the S corporation’s losses, recognizing that New Jersey AAA may be negative.
Since the language of the statute is clear and unambiguous, we need look no further. See In re Kollman, 210 N.J. 557, 568, 46 A.3d 1247 (2012) (“If the plain language is clear, the court’s task is complete.”); Koch, supra, 157 N.J. at 7, 722 A.2d 918 (“If the statute is clear and unambiguous on its face and admits of only one interpretation, [courts should] delve no deeper than the act’s literal terms to divine the Legislature’s intent.”) (alteration in original) (internal quotation marks and citation omitted). Nonetheless, the Cohens turn to legislative history, and place undue reliance on a general pronouncement in the 1993 Assembly Statement expressing the intent to eliminate the taxation of S corporation “dividends.” The pronouncement is found in an explanation that S corporation income would now be passed through to the shareholder and taxed when it is earned.
However, the Legislature did not express an intent to limit taxation of distributions of income under the circumstances presented in the Cohens’ case. Rather, the legislative history supports the Director’s position, inasmuch as the drafters expressly noted more than once, that New Jersey’s new law would treat S corporation losses differently than federal law, because of New Jersey’s system of taxing gross income. See, e.g. Assembly Statement at 1 (stating that “net losses from S corporations are not utilized against other income”).
Nor does Koch command a different interpretation of the S corporation law. Koch addressed the proper method of calculating a partner’s gross income tax basis for purposes of calculating the gain upon the sale of the partnership interest. Koch, supra, 157 N.J. at 3, 722 A.2d 918. The Court held that the basis would not be the federal basis, which was reduced to zero by losses that the taxpayer could not use under the GIT. Id. at 4-5, 9, 722 A.2d 918. Rather, the New Jersey basis would not be reduced by losses *560 that could only be used for federal purposes, resulting in much smaller net gain and less tax than the Director determined was due. Id. at 9, 722 A.2d 918.
The Court’s holding, id. at 6-14, 722 A.2d 918, was grounded in its interpretation of N.J.S.A. 54A:5-1(e), which includes among the items of income subject to GIT: “[n]et gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real or personal, whether tangible or intangible as determined in accordance with the method of accounting allowed for federal income tax purposes.” The section also provides that “[f]or the purpose of determining gain or loss, the basis of property shall be the adjusted basis used for federal income tax purposes,” and “[t]he term ‘net gains or income’ shall not include gains or income from transactions to the extent to which nonreeognition is allowed for federal income tax purposes.” N.J.S.A. 54A:5-1(e).
The Court noted that the statute set forth three concepts to be applied in calculating net gain from disposition of property: “(1) the method of accounting used for federal income tax purposes, (2) the use of the federal adjusted basis, and (3) the exclusion of gains to the extent federal rules require nonrecognition.” Koch, supra, 157 N.J. at 6-7, 722 A.2d 918. The Court held that “federal accounting and nonreeognition provisions” of N.J.S.A. 54A:5-1(e) permitted the calculation of a higher basis for New Jersey taxpayers, notwithstanding N.J.S.A. 54A:5-2, which generally prohibits a GIT taxpayer from deducting losses in one category of income against income in another category. Id. at 9-11, 722 A.2d 918. “Under the federal method, losses not passed through would not reduce a partner’s basis, and gain would be determined by computing the difference between the partner’s cost basis (unreduced by partnership losses) and the proceeds received from the sale of the partnership interest.” Id. at 11, 722 A.2d 918.
The Court also relied on the reasoning in Walsh v. Director, Division of Taxation, 10 N.J.Tax 447 (Tax 1989), aff'd, 240 N.J.Super. 42, 572 A.2d 222 (App.Div.1990), which addressed calculation of an S corporation shareholder’s basis before enact *561 ment of L. 1993, c. 173. “[T]he essence of Walsh ... was to recognize that a taxpayer cannot be taxed on a return of capital.” Koch, supra, 157 N.J. at 12, 722 A.2d 918. Consequently, “Walsh required a taxpayer to reduce his basis only for those losses deductible by him.” Ibid.
The Court has eschewed an “expansive reading of Koch.” Waksal, supra, 215 N.J. at 239, 71 A.3d 878 (rejecting argument that Koch justified allowing taxpayer to deduct worthless nonbusiness debt in calculating GIT). Koch is moored to the language of N.J.S.A. 54A:5-1(e), governing net gains, and the concept that a taxpayer may not be taxed on the return of capital. Ibid.; see also Sidman v. Dir., Div. of Taxation, 18 N.J.Tax 636, 645-47 (Tax 2000) (discussing Koch, and rejecting argument that it authorizes deduction of interest on a loan used to purchase shares in an S corporation in calculating pro rata share of S corporation income), aff'd, 19 N.J.Tax 484 (App.Div.), certif. denied, 170 N.J. 387, 788 A.2d 772 (2001). Koch does not authorize the wholesale adoption of federal principles that are contrary to the plain language of New Jersey law, and the taxation of gross income. Waksal, supra, 215 N.J. at 239, 71 A.3d 878 (“This Court in Koch did not endorse the comprehensive adoption of deductions that are recognized by the Internal Revenue Code but not expressly provided for in New Jersey’s Act.”); Sidman, supra, 18 N.J.Tax. at 647 (“ ‘[W]hen the Legislature intended to incorporate federal income tax concepts, it did so explicitly.’ ” (quoting Smith v. Dir., Div. of Taxation, 108 N.J. 19, 33, 527 A.2d 843 (1987))).
The Cohens do not advocate application of federal principles governing the deduction of losses. .Rather, since federal principles may not be applied to allow them to deduct passed through losses against their income for GIT purposes, they argue the losses should not reduce their AAA as under federal law. We can find no basis in Koch for such a result, nor did the Court express general principles that compel the result the Cohens seek. Koch is a case of statutory interpretation, involving a different provision of law.
*562 Moreover, unlike the taxpayer in Koch, the Cohens do not face the prospect of a tax on the return of capital. While a New Jersey taxpayer and S corporation shareholder may not utilize losses available to the federal taxpayer, the New Jersey taxpayer may add back such losses in calculating basis, thus reducing the net gain upon the sale of stock. N.J.S.A. 54A:5-1(c); see also Koch, 157 N.J. at 9-11, 14, 722 A.2d 918.
In sum, we find no ground in the statute or case law to adopt the Cohens’ proposed rule that New Jersey AAA shall not be reduced by S corporation losses.
Affirmed.

 N.J.S.A. 54A:5-10 states:
a. S corporation income shall be determined without the exclusion, deduction or credit of:
(1) any dividend exclusion or deduction otherwise allowed pursuant to paragraph 5 of subsection (k) of section 4 of P.L.1945, c. 162 (C. 54:10A-4);
(2) taxes paid or accrued to the United States, a possession or territory of the United States, a state including this State, a political subdivision thereof, or the District of Columbia on or measured by profits or income, or business presence or business activity, of the corporation;
(3) any income taxes paid or accrued to the United States, a possession or territory of the United States, a state including this State, a political subdivision thereof, or the District of Columbia paid or accrued by the S corporation on behalf of, or in satisfaction of the liabilities of, shareholders of the corporation;
(4) interest income on obligations of any state other than this State, or of a political subdivision thereof, or of the federal government, except as deducted pursuant to subsection b. of this section; or
(5) interest on indebtedness incurred or continued, expenses paid and incurred to purchase, carry, manage or conserve, and expenses of collection of the income or gain from obligations the income or gain from which is deductible pursuant to subsection b. of this definition; and
b. S corporation income shall be determined after deduction of any gains or income derived from obligations which are referred to in N.J.S. 54A:6-14 or from securities which evidence ownership in a qualified investment fund as defined in section 2 of P.L.1987, c. 310 (C. 54A:6-14.1), and any interest excluded from gross income pursuant to N.J.S. 54A:6-14, or distributions excluded from income pursuant to section 2 of P.L. 1987, c. 310 (C. 54A.-6-14.1); and
c. The character of any S corporation item taken into account by a shareholder of an S corporation shall be determined as if such items were received or incurred by the S corporation and not its shareholder.

The Division actually claimed the loss for 1998 was $1,681,550. However, the Cohens took other reductions of $106,298. The sum of these two amounts is $1,787,848.

 This calculation is before any reduction based on the 2003 distribution.

 The Director does not renew that argument before us. We therefore do not address it.

 The Tax Court’s calculations differ slightly from those set forth above; however, for the purposes of this appeal, the differences are not material. We therefore do not address them.