**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3714-19

LISA TAYLOR,
n/k/a LISA DEMBECK,

    Plaintiff-Appellant,

v.

JARED TAYLOR,

    Defendant-Respondent.

_____

          Argued October 18, 2021 – Decided December 2, 2021

          Before Judges Vernoia and Firko.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FM-10-0377-16.

          Ann Fabrikant argued the cause for appellant (Fabrikant Law, LLC, attorneys; Ann Fabrikant, of counsel and on the briefs).

          Rosanne S. DeTorres argued the cause for respondent (DeTorres & DeGeorge, LLC, attorneys; Rosanne S. DeTorres, of counsel and on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Lisa Taylor, now known as Lisa Dembeck, appeals from the April 7, 2020 Family Part order denying her cross-motion for a modification of defendant Jared Taylor's $307 weekly child support obligation for the parties' two children based on his self-employed income. She also appeals the denial of her request for a modification of the percentages allocated between the parties for payment of unreimbursed medical expenses exceeding $250 per year per child and the May 22, 2020 order denying her motion for reconsideration. The judge ordered defendant to obtain a $125,000 life insurance policy to secure his child support obligation.

The decision as to defendant's income and the $125,000 life insurance amount is affirmed, but we are constrained to vacate both orders in part and remand to the Family Part for the judge to reconsider, address, and make findings of fact and conclusions of law as to: (1) the imputation of income to plaintiff; and (2) plaintiff's claim she is entitled to a deduction of child care costs under Appendix IX-A, guideline twelve of the child support guidelines. We also direct the judge to utilize the line seven ratio on the medical allocation ratio after reconsideration of the above factors.

A-3714-19

The following facts are gleaned from the motion record. The parties divorced in July 2010, after a five-year marriage. They entered into a comprehensive property settlement agreement (PSA), which was incorporated into their judgment of divorce (JOD). Two children were born of the marriage: M.T.,[1] born in December 2006, and Ma.T., born in January 2010. Plaintiff remarried and has two children with her current husband: a son born in May 2016, and another son born in May 2019. On February 27, 2015, the parties entered into a consent order allowing plaintiff to relocate with the parties' children to Goshen, New York, where she now resides with all four of her children.

Paragraph two of the PSA provided defendant would pay plaintiff $334 per week in child support for their two children via income withholding or other means through the appropriate county probation department. Arrearages of $10 per week were assessed, making the child support obligation $344 per week until the arrearages were satisfied.

The child support calculation was based upon the New Jersey child support guidelines–sole parenting worksheet. Plaintiff's annual income was

---

[1] We use initials to protect the confidentiality of the minor children.

imputed at $32,000, or $615 per week, and defendant's annual income was listed as $60,000, or $1,154 per week. The worksheet included defendant's health insurance premium cost for the two children of $65 per week and a net work-related child care expense of $230 per week. Originally, the line six percentage share of income in 2010 (now designated as line seven on the worksheet) was 37% for plaintiff and 63% for defendant. There was no provision for life insurance in the PSA to secure the parties' child support obligation for their children.

On July 2, 2015, the parties signed a second consent order "resolving issues of child support and unreimbursed expenses." The second consent order reduced defendant's weekly child support obligation from $334 to $295, plus arrearages of $150 per month, until paid in full. Attached to the July 2, 2015 consent order was a child support guidelines–sole parenting worksheet. Plaintiff's imputed income remained at $32,000 per year or approximately $615 per week, whereas defendant's income was listed as $2,800 per week, which equates to $145,600 per year. The line seven ratio changed to 23% plaintiff and 77% defendant. No net work-related child care expense was included. Plaintiff added the parties' children to her new husband's health insurance plan thereby eliminating defendant's health insurance premium costs for the children.

 A-3714-19

On April 6, 2016, defendant started an S corporation known as Garden State Information Management, LLC (GSIM). He is the sole owner and employee. GSIM is in the business of outsourcing IT manager roles, help desks, web hosting, email hosting, office construction consulting, video, IP phone and wireless services. GSIM invoices clients for its services and payments are made to the corporation. From 2016 until approximately the first half of calendar year 2019, defendant paid himself by "taking distributions" as the owner of GSIM.[2] Beginning in August 2019, defendant converted to a W-2 employee status based on his accountant's advice.

In December 2019, defendant filed a notice of motion in aid of litigant's rights based on plaintiff's refusal to produce their children for his parenting time and other relief. In response, plaintiff filed a notice of cross-motion seeking a recalculation of child support and a modification of the parties' contributions towards the line seven unreimbursed medical expenses. Specifically, plaintiff sought a recalculation of child support to include the Other Dependent Deduction (ODD) in light of the birth of her two other children and work-related

_____

[2] The distributions were as follows:

2017 - $139,597
2018 - $165,733
2019 - $118,000 plus W-2 income of $34,800

 A-3714-19

child care expenses, even though she is not employed pursuant to Appendix IX-A, guideline twelve.

On January 24, 2020, a Family Part judge issued an initial order directing the parties to comply with their existing consent order regarding defendant's parenting time, with a one-time exception on January 26, 2020. Following oral arguments of the parties, the judge issued a supplemental order on the motion and cross-motion on February 13, 2020, addressing the remaining issues. Relevant to the matter under review, paragraph sixteen of the February 13, 2020 order directed "the parties to submit financial documentation to the court" for the purpose of recalculating child support by a child support hearing officer.

In compliance with the order, defendant submitted: (1) GSIM's 2017 corporate tax return representing $151,522 of his gross income, $139,934 of net income, and $139,597 of profit distributions; (2) GSIM's corporate tax return from 2018 reflecting $184,615 of gross income, $170,128 of net income, and profit distributions of $165,733; (3) an accounting spreadsheet for January through July 2019 showing $118,000 in profit distributions; and (4) a 2019 W-2 form for himself covering the period from August 2019 to December 31, 2019, indicating $34,800 in wages.

On April 3, 2020, another Family Part judge conducted oral argument on the issue of recalculating child support because proceedings typically handled by child support hearing officers were cancelled due to the COVID-19 pandemic. Counsel for plaintiff argued that M.T. "can essentially watch herself after school," but Ma.T. needs "before and after care." The cost at the YMCA for before and after care for Ma.T. is $456 per month. Defendant disputed that Ma.T. needed before and after care. After hearing arguments from counsel for both parties, the judge reserved decision. On April 7, 2020, the judge issued an order and a statement of reasons.

The judge noted in his decision that "[p]er the parties' agreement stated on the record during oral argument, [defendant]'s income is $140,421.83 [per] year for the purposes of child support recalculation." In addition, the parties agreed to the amounts defendant contributes to his medical expenses and mandatory union dues. The judge rejected plaintiff's argument that defendant is concealing income in his solely owned company. According to the judge, defendant "works primarily from home" and therefore, he "may still incur work-related expenses," such as travel, purchasing equipment, and additional utility expenses.

Regarding the S corporation designation, the judge highlighted that such an entity is "entitled to deduct ordinary and necessary expenses under the tax

code." The judge concluded defendant's deductions were "reasonable and ordinary" and "[p]laintiff failed to establish that leaving a certain amount of funds [($15,000)] in the company after receiving wages and distribution necessarily equates to concealment of income."

In addressing imputation of income to plaintiff, the judge noted her request to be imputed $32,000 per year as a cosmetologist, the same imputation that was utilized over ten years ago for her in the PSA. On the other hand, defendant sought to have plaintiff imputed the sum of $39,780 per year as an "experienced receptionist" based upon a prior similar job she had in 2011. In rejecting both parties' positions, the judge determined that plaintiff should be imputed income as an "experienced child care worker" at the rate of $32,790 per year, based upon the current New York Labor Wage Compendium. The judge "considered plaintiff's argument that she spends most of her time caring for her children and home" in making his decision. "Three equitable considerations" were factored into the judge's decision:

> (1) imputing income as an experienced child care worker reduced the amount plaintiff needed for child care needs;
>
> (2) this imputed income reflected "the activities in which plaintiff is presently engaged"; and

A-3714-19

(3) it satisfied the court's need to impute income to plaintiff "who is voluntarily unemployed."

The judge pointed out that after comparing the guidelines worksheet calculations, "the difference between plaintiff's income imputed as $39,780 or $32,790 is $4 per week." The new child support amount defendant was ordered to pay is $307 per week retroactive to December 23, 2019, the filing date of plaintiff's motion. The judge ordered the percentage share of the children's unreimbursed medical expenses would continue as the parties agreed in their PSA—37% to be paid by plaintiff and 63% to be paid by defendant. According to the revised guidelines worksheet, the line seven ratio was 19% for plaintiff and 81% for defendant. A Uniform Support Order was entered with the judge's statement of reasons and the guidelines attached. No counsel fees were awarded.

On April 27, 2020, plaintiff filed a motion for reconsideration. In her moving certification, plaintiff detailed the errors she believed the judge made in calculating the guidelines child support amount. She also requested defendant be directed to maintain life insurance "in an amount that covers his current child support obligation" plus four years of college. Plaintiff asked to be named as trustee and custodian of the life insurance policy, and the children be designated as co-equal beneficiaries. On May 6, 2020, defendant filed a notice of cross-motion opposing reconsideration and seeking counsel fees for defending

plaintiff's motion and filing his cross-motion. On May 22, 2020, the judge denied both motions and issued a statement of reasons pursuant to Rules 1:6-2(f) and 1:7-4.

After reciting the standards to be analyzed in addressing a reconsideration motion, the judge denied plaintiff's motion insofar as she requested a recalculation of defendant's child support obligation, noting her arguments were "mere recitations" of her prior arguments. And, the judge explained that even if plaintiff's income was imputed as a hairdresser,[3] without including child care costs, "the child support amount would still be $307 [per] week."

As to life insurance, the judge ordered defendant to increase his policy from $50,000[4] to $125,000 to secure child support and college payments in case of his premature death under N.J.S.A. 2A:34-23. The judge denied defendant's cross-motion seeking counsel fees after considering Rule 4:42-9 subsections (b) to (d), N.J.S.A. 2A:34-23, and RPC 1.5(a). A memorializing order was entered.

II.

On appeal, plaintiff contends the judge committed harmful error by:

---

[3] We assume the judge meant to say "cosmetologist" and not "hairdresser."

[4] The record does not state when defendant obtained the $50,000 life insurance policy.

(1) incorrectly calculating defendant's child support obligation under the guidelines; improperly imputing income to plaintiff inconsistent with her work history and experience; and failing to impute child care costs despite being imputed with full-time employment;

(2) denying plaintiff's request to modify the parties' respective share of the children's unreimbursed medical expenses; and

(3) setting defendant's obligation to maintain life insurance based on an incorrect child support amount.

Our review of a Family Part judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "Because of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court factfinding." Id. at 413. Thus, we will not "engage in an independent assessment of the evidence as if [we] were the court of first instance." N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002) (alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

We will "not disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). With regard to

11

questions of law, a trial judge's findings "are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." Z.P.R., 351 N.J. Super. at 434 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"Consequently, when [we] conclude[] there is satisfactory evidentiary support for the trial court's findings, '[our] task is complete and [we] should not disturb the result . . . .'" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (fifth alteration in original) (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)). "Deference is appropriately accorded to factfinding; however, the trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)). "[L]egal conclusions are always reviewed de novo." Id. at 433-34 (citing Manalapan, 140 N.J. at 378).

Harmful error is tested by the standard set forth in Rule 2:10-2. That is, whether the error is "clearly capable of producing an unjust result." R. 2:10-2. The harmful error rule is used when a specified error was brought to the trial judge's attention. See State v. G.E.P., 243 N.J. 362, 389 (2020); State v. Mohammed, 226 N.J. 71, 86 (2016). Thus, even though an alleged error was brought to the trial judge's attention, it will not be ground for reversal if it was

"harmless error." See Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018); State v. J.R., 227 N.J. 393, 417 (2017); State v. Macon, 57 N.J. 325, 338 (1971). "The proper and rational standard is not perfection; as devised and administered by imperfect humans, no trial can ever be entirely free of even the smallest defect. Our goal, nonetheless, must always be fairness. 'A defendant is entitled to a fair trial but not a perfect one.'" State v. R.B., 183 N.J. 308, 333-34 (2005) (quoting Lutwak v. U.S., 344 U.S. 604, 619 (1953)).

"When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion." J.B. v. W.B., 215 N.J. 305, 325-26 (2013) (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)). "The trial court's 'award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" Ibid. (quoting Jacoby, 427 N.J. Super. at 116).

We may thus reverse a trial court's decision when it "is 'made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). Moreover, we are not bound by "[a] trial court's

13

interpretation of the law" and do not defer to legal consequences drawn from established facts. Manalapan, 140 N.J. at 378 (citations omitted).

New Jersey courts have long recognized that "[t]he duty of parents to provide for the maintenance of their children is a principle of natural law." Burns v. Edwards, 367 N.J. Super. 29, 39 (App. Div. 2004) (quoting Greenspan v. Slate, 12 N.J. 426, 430 (1953)). Thus, children "have the right to support from their parents[,]" Connell v. Connell, 313 N.J. Super. 426, 430 (App. Div. 1998), and parents are "obliged to contribute to the basic support needs of an unemancipated child to the extent of the parent's financial ability," Burns, 367 N.J. Super. at 39 (quoting Martinetti v. Hickman, 261 N.J. Super. 508, 513 (App. Div. 1993)). Each parent must share the cost and shoulder the responsibility of contributing to the children's basic needs, despite a parent's fractured relationship with their children. Pascale v. Pascale, 140 N.J. 583, 591 (1995). In that sense, child support awards are unrelated and unconnected to any interference with the rights of custody and visitation by the other parent. Id. at 592 (citing Ross v. McNasby, 259 N.J. Super. 410, 414 (App. Div. 1992)).

The right to support should "accord with the current standard of living of both parents which may" include "non-essential items that are reasonable and in the child's best interest." Isaacson v. Isaacson, 348 N.J. Super. 560, 582 (App.

14

Div. 2002) (first quoting Zazzo v. Zazzo, 245 N.J Super. 124, 130 (App. Div. 1990); and then citing Dunne v. Dunne, 209 N.J. Super. 559, 567-68 (App. Div. 1986)). Children are not only entitled to bare necessities, but the benefit of their parents' financial achievements. Id. at 580 (citing Dunne, 209 N.J. Super. at 567). The foundation of these support principles is "the best interest of the children." Caplan v. Caplan, 182 N.J. 250, 272 (2005).

In establishing or modifying a child support award, courts must rely on articulated guidelines. R. 5:6A. The guidelines "attempt to simulate the percentage of parental net income that is spent on children in intact families" to award support in an appropriate amount. Caplan, 182 N.J. at 264. Net income includes a person's "gross income minus income taxes, mandatory union dues, mandatory retirement, previously ordered child support orders, and . . . theoretical child support obligation[s] for other dependents." Ibid. (quoting Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A (2022)).[5] Gross income is "all earned and unearned income that is recurring or will increase the income available to the recipient

_____

[5]  In 2005, Caplan cited the then-most recent edition of Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A (2005). The 2022 version is identical in parts relevant to this opinion. Thus, for the court's convenience, all citations to Appendices IX-A and IX-B to R. 5:6A refer to the current 2022 edition.

15

over an extended period of time." Id. at 265 (quoting Pressler & Verniero, Appendix IX-B to R. 5:6A (2022)).

Turning to plaintiff's first argument, she contends the judge abused his discretion by failing to consider defendant's income as a self-employed individual instead of a wage earner. Plaintiff also asserts that defendant misrepresented his income and expenses in order to reduce his child support obligation. We reject plaintiff's arguments.

The judge held a hearing to recalculate defendant's child support obligation. In his decision, the judge thoroughly considered the documentary evidence, including defendant's current case information statement (CIS).[6] Since the hearing occurred prior to June 20, 2020, the judge properly relied on defendant's financial information from calendar year 2019,[7] which was

---

[6] Rule 5.5-4(a)(4) states, "[T]he movant shall append copies of the movant's current [CIS] and the movant's [CIS] previously executed or filed in connection with the order, judgment[,] or agreement sought to be modified." The record does not contain defendant's prior CIS's.

[7] The guidelines state that if the court calculates gross income before June 30 of the hearing's year, "use Federal and State income tax returns, W-2 statement(s) and IRS 1099's from the preceding year. If tax documentation is unavailable, use any other available evidence of current earnings (e.g., . . . for the self-employed, statements of business receipts and expenses)." Pressler & Verniero, Appendix IX-B to R. 5:6A (2022). The guidelines emphasize the court should use this method "when possible," and continue to note that in the

available. Defendant's 2019 tax returns had not yet been filed. However, as instructed by the guidelines, defendant submitted his 2019 profit distribution data covering the period from January through July 2019 and his W-2 statement from August to December 2019. In addition, defendant produced his 2017 and 2018 tax returns.

The judge averaged defendant's income based upon this information and determined his income is $152,723.33 per year or $2,937 per week. While plaintiff correctly points out that "W-2 wages and distributions are not used in the calculation of self-employment income," under Appendix IX-B, the judge retains the discretion to employ his or her chosen method if good cause is found to disregard the guidelines. R. 5:6A. Moreover, the trial court decides whether or not good cause exists. Pressler & Verniero, Appendix IX-A to R. 5:6A (2022).

Applying these principles, we discern no basis to intervene. The judge based defendant's income on an average of his prior 2017 and 2018 distributions and 2019 W-2 income because the 2019 tax return had not yet been prepared.

---

event "[t]he review of a paystub, W-2 form, IRS-1099 form or tax return [does] not provide all necessary income information for a parent[,] [t]he accurate determination of income may be dependent on a combination of these documents and testimony." Ibid.

We discern no abuse of discretion in employing this methodology.  See, e.g., Elrom, 439 N.J. Super. at 438 (discerning "no abuse of discretion in using a three-year average of defendant's earnings from all sources" and concluding this "a fair and reasonable methodology" to determine income based on credible evidence.)  Therefore, we reject plaintiff's argument that defendant is hiding income and disguising personal expenses as business expenses.

Likewise, the judge aptly found that S corporations—such as GSIM—are entitled to certain deductions under the tax code.  "An S corporation is a pass-through entity."  Cohen v. N.J. Div. of Tax'n, 28 N.J. Tax 548, 550-51 (App. Div. 2015) (citing Sidman v. Dir., Div. of Tax'n 19 N.J. Tax 484, 492 (2001)).  Federal law does not tax S corporations at the corporate level.  Id. at 551 (citing I.R.C. § 1366(f)(2)).  Instead, losses and income are passed through individual shareholders to avoid double taxation.  Ibid. (citing I.R.C. § 1366(f)(2)).  New Jersey recognizes S corporations but deviates from federal law in certain ways, such as taxing at the corporate level at a reduced rate.  Ibid.  All S corporation's ordinary and necessary expenses are deductible when paid or incurred during the taxable year.  I.R.C. § 162(a).

Here, the judge found defendant incurred work-related expenses by using his home essentially as his office, and related business expenses, such as

traveling. In his decision, the judge determined it was within defendant's "business judgment" as GSIM's owner to handle the funds as he chooses without scrutiny. The judge was correct in his analysis. Moreover, the record is devoid of any evidence that defendant is inappropriately retaining cash in his business.

III.

Plaintiff also urges error in the judge's imputation of income to her as an experienced child care worker. A trial judge has the discretion to impute income, but only after first finding "that a party . . . is voluntarily unemployed or underemployed." Golian v. Golian, 344 N.J. Super. 337, 341 (App. Div. 2001) (citing Dorfman v. Dorfman, 315 N.J. Super. 511, 516 (App. Div. 1998)); Caplan, 182 N.J. at 268. In fact, "[s]uch a finding is requisite, before considering imputation of income." Dorfman, 315 N.J. Super. at 516 (citations omitted). Here, the judge determined plaintiff voluntarily chose to stay home and care for her children, and it was appropriate to impute income to her. Plaintiff does not dispute this.

"Imputation of income is a discretionary matter not capable of precise or exact determination but rather requiring a trial judge to realistically appraise capacity to earn and job availability." Storey v. Storey, 373 N.J. Super. 464, 474 (App. Div. 2004). On appeal, a trial judge's imputation of a specific amount

19

of income "will not be overturned unless the underlying findings are inconsistent with or unsupported by competent evidence." Id. at 474-75 (citations omitted). There are no bright-line rules that govern the imputation of income. See Id. at 474; see also Caplan, 182 N.J. at 270 (reviewing the factors the trial court should consider when "determin[ing] the reasonable amount of income to be imputed to that party."). Against these standards, we are constrained to reverse and remand to the Family Part judge for reconsideration of the amount of income plaintiff should be imputed with.

As previously stated, the PSA imputed plaintiff with a $32,000 income as a cosmetologist. Licensed in cosmetology since 1999, she worked at various salons in this State through 2011 before working as a receptionist in a medical office until 2014. Since that time, plaintiff has "been a stay-at-home parent." Notably, in 2015 when child support was recalculated, plaintiff was imputed with the same income of $32,000 per year.

Appendix IX-A, paragraph twelve, of the child support guidelines sets forth the considerations to be analyzed when imputing income to parents. In relevant part,

> The fairness of a child support award resulting from the application of these guidelines is dependent on the accurate determination of a parent's net income. If the court finds that either parent is, without just cause,

voluntarily underemployed or unemployed, it shall impute income to that parent according to the following priorities:

a.  impute income based on potential employment and earning capacity using the parent's work history, occupational qualifications, educational background, and prevailing job opportunities in the region.  The court may impute income based on the parent's former income at that person's usual or former occupation or the average earnings for that occupation as reported by the New Jersey Department of Labor (NJDOL);

b.  if potential earnings cannot be determined, impute income based on the parent's most recent wage or benefit record (a minimum of two calendar quarters) on file with the NJDOL (note: NJDOL records include wage and benefit income only and, thus, may differ from the parent's actual income); or

c. if a NJDOL wage or benefit record is not available, impute income based on the full-time employment ([forty] hours) at the prevailing New Jersey minimum wage.

In determining whether income should be imputed to a parent and the amount of such income, the court should consider: (1) what the employment status and earning capacity of that parent would have been if the family had remained intact or would have formed, (2) the reason and intent for the voluntary underemployment or unemployment, (3) the availability of other assets that may be used to pay support, and (4) the ages of any

children in the parent's household and child-care alternatives. The determination of imputed income shall not be based on the gender or custodial position of the parent.

In his decision, the judge imputed plaintiff with an income of $32,790. Although recognizing plaintiff does not possess any certifications or experience in professional child care, the judge reasoned that she had the qualifications and experience as a voluntarily unemployed individual who has been taking care of her children full time for several years already. Caplan, 182 N.J. at 265 (citing Pressler & Verniero, Appendix IX-A to R. 5:6A (2022)). Also, considering plaintiff lives in Goshen, the judge determined $32,970 was the appropriate amount based on "the most current [New York] Labor Wage Compendium." See Caplan, 182 N.J. at 265 (citing Pressler & Verniero, Appendix IX-A to R. 5:6A (2022)).

As we underscored in Storey, there are no bright-line rules that govern the imputation of income. Id. at 474; see Caplan, 182 N.J. at 270. However, Appendix IX-A provides the basis for imputation of income in accordance with the party's usual or former occupation. Caplan, 182 N.J. at 265. Since the record is devoid of any evidence that plaintiff was previously employed as a child care worker, we reverse and remand for the judge to reconsider appropriate

22

imputation of income for her based upon her employment history in conjunction with Appendix IX-A, paragraph twelve considerations.

Plaintiff next challenges the judge's decision not to impute child care costs to her while simultaneously imputing full-time income to her. "When imputing income to a parent who is caring for young children, the parent's income share of [child care] costs necessary to allow that person to work outside the home shall be deducted from the imputed income." Pressler & Verniero, Appendix IX-A to R. 5:6A (2022) (emphasis added). Here, the judge emphasized in his May 22, 2020 order that he "declined to impute child care costs because plaintiff never incurred such costs," but never specified why he was deviating from the guidelines.

Plaintiff asserts that, although she "is a stay-at-home parent and does not earn income," she "cannot be expected to work full-time while also caring for her children-full time." Here, plaintiff did not seek child care costs for Ma.T. for the period of her unemployment but she seeks an allocation of child care costs against the full-time income the judge imputed to her. The judge erred in not considering the imputed child care expense for Ma.T. under Appendix IX-A. In the remand hearing, the judge should consider work-related child care expenses plaintiff would incur for Ma.T..

Next, plaintiff argues the judge erred by denying her request to modify the parties' respective share of the children's unreimbursed medical expenses. The judge found no reason to modify the percentages agreed to by the parties in their PSA "particularly without defendant's express consent." Plaintiff further contends defendant's increased income since their JOD was entered constitutes a changed circumstance that warrants the division of the unreimbursed medical expenses be updated to reflect the current line seven of the guidelines worksheet.

Paragraph three of the PSA provides:

> [Plaintiff] shall be solely responsible for the first $250.00 per calendar year of unreimbursed medical, dental and prescription needs of each [c]hild. [Defendant] shall be responsible to provide for the benefit of the [c]hildren, medical insurance, together with major medical insurance coverage, for so long as [defendant] receives such insurance as a benefit of his employment. [Defendant] and [plaintiff] shall be responsible for the [c]hildren['s] unreimbursed medical, dental and prescription needs in excess of $250.00 per calendar year, per [c]hild, in proportions allocated according to the attached [c]hild [s]upport [g]uidelines [w]orksheet: [plaintiff] 37% and [defendant] 63%.

Child support orders are always subject to review and modification upon a showing of "changed circumstances." Lepis v. Lepis, 83 N.J. 139, 146 (1980). Upon a motion to modify an order, "the moving party has the burden to make a prima facie showing of [the] changed circumstances warranting relief."

24

Isaacson, 348 N.J. Super. at 579.  Changed circumstances may "include 'an increase in the cost of living, an increase or decrease in the income of the supporting or supported spouse, cohabitation of the dependent spouse, illness or disability arising after the entry of the judgment, and changes in federal tax law.'"  Quinn v. Quinn, 225 N.J. 34, 49 (App. Div. 2016) (quoting J.B. v. W.B., 215 N.J. 305, 327 (2013)).

It is within the trial court's discretion to modify a marital agreement, like a PSA, when the moving party can show a changed circumstance warrants relief. Quinn, 225 N.J. at 49; Isaacson, 348 N.J. Super. at 579.  "Absent 'compelling reasons to depart from the clear, unambiguous, and mutually understood terms of the PSA,' a court is generally bound to enforce the terms of a PSA."  Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 589 (2016) (quoting Quinn, 225 N.J. at 55) (finding no changed circumstances requiring modification of the parents' college-cost responsibilities under the PSA).  If the PSA that addresses disputed matters in a post-judgment matrimonial motion is equitable and fair, "courts will not 'unnecessarily or lightly disturb[]' the agreement."  Ibid. (alteration in original) (quoting Quinn, 225 N.J. at 44).  This falls in line "with New Jersey's 'strong public policy favoring stability of arrangements in matrimonial matters.'"

Ibid. (quoting Quinn, 225 N.J. at 44); Massar v. Massar, 279 N.J. Super 89, 93 (App. Div. 1995).

However, a court is free to alter a PSA if changed circumstances render strict enforcement of the terms inequitable. Id. at 590 (citing Quinn, 255 N.J. at 54-55; Lepis, 83 N.J. at 146-148). A PSA entered into by informed and legally represented parties without evidence of "overreaching, fraud, or coercion" obliges a court to enforce its term. Ibid. (quoting Quinn, 225 N.J. at 55). Should unanticipated changed circumstances or inequity not addressed in the PSA arise, the court will deviate from the strict enforcement. Ibid.

Since plaintiff moved for the modification under review, she bears the burden of proving defendant's income increase caused an inequity unanticipated by the PSA. Isaacson, 348 N.J. Super. at 579; Avelino-Catabran, 445 N.J. Super. at 589. Specifically, she claims that defendant's increased income from $60,000 in 2010 as stated in the PSA to $152,723 represents an eighty-five percent of the parties' combined incomes. The judge noted that "[n]either party provided any reason to modify the PSA, such as duress or fraud." See Avelino-Catabran, 445 N.J. Super. at 589-590. On this point, we agree with plaintiff.

Our interpretation of paragraph three is de novo. That provision provided plaintiff would be responsible for 37% of the children's unreimbursed medical,

dental, and prescription needs in excess of $250 per calendar year, predicated on line six (now line seven) of the guidelines worksheet prepared at the time the JOD was entered. Nowhere in the PSA or record does it state the parties agreed the line seven ratio of incomes would remain constant in future child support calculations or awards. Indeed, the purpose of the line seven allocation ratio is to reflect the newly calculated child support amount and for the parents or guardians to share unreimbursed medical expenses in proportion to their currently earned or imputed incomes in a fluid fashion. Therefore, on remand, we direct the judge to utilize the line seven ratio percentages after the child support guidelines are revised and not the percentages set forth in the PSA.

Plaintiff also challenges the $125,000 life insurance policy ordered by the judge was insufficient and based upon an erroneously calculated child support obligation of $307 per week. The judge found the children needed "more financial protection" than the $50,000 life insurance defendant had in place.

N.J.S.A. 2A:34-23 permits the court to require a child support obligor to secure his or her obligation for the continued payment of child support. The statute also grants this power to secure obligations "as to the care, custody, education and maintenance of the children." Ibid. The amount of security imposed is within the judge's discretion "as the circumstances of the parties and

27

the nature of the case shall render fit, reasonable and just." Ibid.; see also Strahan v. Strahan, 402 N.J. Super. 298, 316 (App. Div. 2008) ("If a trial court intends to secure child support pursuant to N.J.S.A. 2A:34–23, it must do so in a reasonable manner."). These orders for security include, but are not limited to, the creation of trusts or life insurance policies to guarantee any reasonably foreseeable educational expenses are paid. Ibid.

Prior to the judge's decision under review, defendant maintained a $50,000 life insurance policy naming the parties' two children as beneficiaries, with instructions to his mother on dividing the proceeds. After considering the best interests of the children, the judge found the amount was insufficient and instructed defendant to obtain a $125,000 policy, noting this would not pose an undue burden. And, defendant did not object to the increased amount.

On appeal, plaintiff asserts the $125,000 life insurance amount is too low and was improperly calculated based on the erroneously determined $307 weekly child support obligation. After our careful review of the record, we discern no abuse of discretion, and plaintiff provides no evidence of error. Underpinning the life insurance determination here was the judge's finding that defendant's average earned income was $152,723 per year. The judge's decision comports with N.J.S.A. 2A:34-23, and we see no basis to disturb it.

## IV.

Reconsideration is only available when "either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

We review a trial court's decision on a motion for reconsideration under an abuse of discretion standard. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). Thus, "a trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). A court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Ibid. (quoting Flagg, 171 N.J. at 571). Here, in light of our decision, we need not address the judge's decision on reconsideration other than what we have already stated.

A-3714-19

Plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part; reversed, vacated, and remanded in part for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION